UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
GENON MID-ATLANTIC, LLC & GENON        :
CHALK POINT, LLC                       :
                                       :
    Plaintiffs,                       :
                                       :    11 CV 1299 (HB)
        - against -                  :
                                       :    OPINION &
STONE & WEBSTER, INC.,                 :    ORDER
                                       :
    Defendant.                        :
---------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

        Before the Court is a brief in support of a claim of privilege made by Defendant Stone and Webster, Inc. ("Shaw") as to Document No. SHAW E0015714607 ("Document"). The brief was provided after I requested more detailed briefing following a letter motion made by Plaintiffs GenOn Mid-Atlantic, LLC and GenOn Chalk Point, LLC (collectively, "GenOn") on October 25, 2011, asking that I find that the Document was not privileged and could be introduced at certain depositions.[1] For the reasons set forth below, I find that the Document is privileged work product, and GenOn's letter motion is consequently DENIED.

### I.  BACKGROUND

        Because a more extensive review of the background of this case is available in my opinion of June 6, 2011, *GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.* (*GenOn I*), 11 Civ. 1299, 2011 WL 2207513, at *1-*2 (S.D.N.Y. June 6, 2011), and an extensive recent opinion issued by Magistrate Judge Frank Maas on the status of various privilege claims made as to other disputed documents, *GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.* (*GenOn II*), No. 11 Civ. 1299, 2011 WL 5439046, at *1-*2 (S.D.N.Y. Nov. 10, 2011), a short summary of this action will suffice. To comply with the passage of a 2006 Maryland environmental law, GenOn undertook the upgrade of the air quality control systems at three of its power plants. *GenOn I*, 2011 WL 2207513, at *1. Under the Turnkey Agreement, dated July 30 2007, Shaw was to design and build these improved air quality control systems. *Id.* Compensation under the contract was not fixed, but would be determined by applying a formula containing two variables: (1) the target cost set out in the contract; and (2) the total amount of reimbursable costs incurred by the

---

[1] Those depositions have already taken place.  Shaw was given a choice between allowing the Document to be introduced at the depositions and objecting on privilege grounds or precluding the Document at the depositions but filing more complete briefing.  Shaw elected option 2 and the additional briefs are now before the Court.

1

contractor to complete the work, or the actual costs. *Id.* The target cost was also subject to modification by "change order."[2] GenOn brought this declaratory judgment action claiming that it does not have to pay Shaw for some of the work performed above the contract amounts after cost overruns for the project were projected to exceed $100 million. *Id.*

The Document in dispute consists of financial spreadsheets and illustrations graphing the calculations contained in the spreadsheets. The spreadsheet, originally created in 2009, shows the combination of charges and change orders that would maximize Defendant Shaw's profits on the project based on the elaborate compensation formulas provided for under the Turnkey Agreement. The Document is not addressed to anyone and does not have any privilege markings.

## II.  LEGAL STANDARD

Work-product privilege, established by *Hickman v. Taylor*, 329 U.S. 495 (1947), and codified in FRCP 26(b)(3)(A), precludes discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FRCP 26(b)(3)(A). The privilege applies to documents prepared "*because of*" litigation. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). There is a heavy burden on the party claiming work-product protection. *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003).

"[D]ocuments prepared in the ordinary course of business, or that otherwise would have been prepared absent the prospect of litigation, do not receive work product protection." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010). At the same time, a document prepared because of the prospect of litigation does not lose its work-product protection merely because it may assist in business decisions. *Adlman*, 134 F.3d at 1195 ("We hold that a document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation, does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation."). If a document is work product, the privilege applies unless the party opposing the privilege can demonstrate "substantial need" for the document. *Id.* at 1204.

---

[2] Change orders are added to or deleted from the original scope of work of a contract, which alter the original contract amount or completion date of the project. A change order could stem from a legitimate, previously unknown obstacle to a project, or from a contractor's addition of fees and work items through change orders once they have obtained the contract, an exploitive tactic.

### III.  DISCUSSION

Shaw asserts that the disputed Document is privileged work product, which was created in preparation for the mediation between GenOn and Shaw scheduled for March 1, 2011. Shaw's Brief 3.  The Document has a creation date of 2009 because it was based off a document created earlier by GenOn's sourcing manager, Priya Gill ("Gill"). Shaw's Brief, Ex. 3 Ferguson Decl. ¶ 6.  In January or February 2011, Michael A. Branca, outside counsel for Shaw, "requested Stone & Webster, Inc. to create scenarios showing how the compensation factors in Section 13 of the Contract would operate under various potential outcomes of the various disputed costs and change orders." *Id.* at ¶ 4.  Peter Ferguson ("Ferguson"), Shaw's Project Director, forwarded the Document to Greg Hill and Mark Monahan to develop these compensation scenarios under relevant articles of the parties' contract, *id.* at ¶ 6, to assist in illustrating how the compensation formulas worked as guidance for Mr. Branca at the mediation. Shaw's brief 3.  Shaw has submitted a declaration in support of these assertions from Ferguson, which avers that "Document No. SHAW E0015714607 was created solely as the result of Mr. Branca's request as passed on by me to Messrs. Hill and Monahan.  Stone & Webster had not previously created such scenarios." Ferguson Decl. ¶ 7.

GenOn asserts that this Document was created in the ordinary course of business. GenOn Reply 2.  According to GenOn, Shaw and GenOn have both created similar compensation scenarios throughout their business relationship, as evidenced, for example, by the fact that the original spreadsheets that the Document was based off of came from Gill. *Id.* at 3.  Further, GenOn asserts that the purpose of this Document was for Shaw to determine how to maximize its profits, as demonstrated by Shaw's alteration of its change order and accounting assertions after updating the spreadsheet in February 2011, such that by June 2011, Shaw claimed it was entitled to change orders placing it near the peak compensation zone identified in the February 2011 calculations. *Id.* at 4.

Based on the explanation presented by Shaw, including the sworn declaration of Ferguson, this Document is protected work product.  The Document would not have been created in the same form "irrespective of the litigation," but rather was created specifically in preparation for mediation. *Adlman*, 134 F.3d at 1195, 1202 ("Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)."). The protection of Rule 26(b)(3) is not limited exclusively to materials prepared to assist at trial. *Id.* at 1198. ("The text of Rule 26(b)(3) does not limit its protection to materials prepared to assist at trial. To the contrary, the text of the

3

Rule clearly sweeps more broadly. It expressly states that work-product privilege applies not only to documents 'prepared . . . for trial' but also to those prepared 'in anticipation of litigation.' ") (quoting FRCP 26(b)(3)(A)).

Even if, as GenOn argues, the Document was used by Shaw to determine what levels of change orders and charges to assert against GenOn, because the Document was prepared because of litigation, to assist with an upcoming mediation, the work-product privilege applies. *Adlman*, 134 F.3d at 1202 (finding that a document prepared because of litigation does not lose its work-product protection merely because it may be used to assist in business decisions). Shaw has met its heavy burden, *In re Grand Jury Subpoenas*, 318 F.3d at 384, of demonstrating that this Document would not have been prepared in "essentially similar form irrespective of the litigation." *Adlman*, 134 F.3d at 1202. GenOn has not presented evidence of a "substantial need" for the Document to overcome the privilege. *Id.* at 1204.

GenOn makes two additional arguments, relying on the earlier decisions by Judge Maas and myself addressing various assertions of privilege. Both arguments fail. First, GenOn asserts that the situation addressed by my decision on June 6, 2011, was "very similar." GenOn Brief 4. There, I found that documents created in connection with GenOn's third-party audit of Shaw's accounting information were not entitled to work-product protection, explaining that the documents served a "dual purpose" of fulfilling "a contractual right in the ordinary course of business" and also assessing "the availability and strength of potential legal claims." *GenOn I*, 2011 WL 2207513, at *3. That situation, however, is clearly distinguishable: those documents were created "*because of*" the provision in the Turnkey Agreement for such audits. This Document, on the other hand, was created "*because of*" a lawyer's request to help him prepare for mediation.

Second, GenOn has suggested to Shaw that Judge Maas's recent privilege ruling resolves this issue.[3] To the extent that GenOn believes this to be the case, I agree with Shaw that Judge Maas has simply not reached the issue because it was not before him. First, Judge Maas did not consider Document E0015714607. *GenOn II*, 2011 WL 5439046. Further, the "similar" documents addressed by Judge Maas were financial reporting and other accounting documents, withheld by Shaw on the grounds of attorney-client privilege, not work-product doctrine. *GenOn II*, 2011 WL 5439046, at *10. In fact, Judge Maas specifically recognized that the work-product

---

[3] On November 28, 2011, we received an additional letter from Shaw, which indicates that GenOn has suggested that Judge Maas addressed documents similar to the E0015714607 and has resolved the issue of privilege with respect to this Document. Letter from Shaw, Nov. 28, 2011. I reach this argument here by way of completeness: it does not appear in GenOn's Brief.

4

doctrine was not an argument before him, and noted that his decision might be different were Shaw arguing that the documents were protected work product: "While at least some of these documents could conceivably constitute work product, Shaw failed to rely on the work product doctrine with respect to them in its privilege log. Accordingly, any work product protection that Shaw might have been entitled to assert has been waived." *Id.* at *13 n.19.

## CONCLUSION

For the foregoing reasons, GenOn's letter motion to find Document E0015714607 not privileged is DENIED.

SO ORDERED
December 5, 2011
New York, New York

_____
U.S.D.J.